JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LOS ANGELES WATERKEEPER, a California non-profit association,

Plaintiff,

v.

WEST COAST-ACCUDYNE, INC., a California corporation, and WILCOX MACHINE COMPANY, a California corporation,

Defendants.

Case No.: 2:25-cv-08748-SK

**~~[PROPOSED]~~ CONSENT DECREE**

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant West Coast-Accudyne, Inc. ("Accudyne") operates at 7190 Scout Avenue, Bell Gardens, CA 90201, and Defendant Wilcox Machine Company ("Wilcox") operates at 7180 Scout Avenue, Bell Gardens, CA 90201 (collectively "Defendants");

**WHEREAS**, the Facility's industrial activities consist of metal machining and manufacturing of hydraulic press systems. The Facility is categorized under Standard Industrial Classification ("SIC") Codes 3569 (Accudyne) and 3599 (Wilcox);

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendants' operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 2, 2025, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act;

**WHEREAS**, on September 15, 2025, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:25-cv-08748-RGK-SSC ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including the Rio Hondo, Los Angeles River, San Pedro Bay, and Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, Defendants have committed to the installation of an Advanced Treatment System to improve stormwater management at the Facility and implement this Consent Decree;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues

alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND DEFINITIONS

### A. Agency Review of Consent Decree

8. Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. Definitions

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under

the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a. "Advanced Treatment System" means a storm water treatment system that includes both mechanical and adsorptive media filtration.

b. "BAT" means the Best Available Technology Economically Achievable.

c. "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

d. "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

e. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g. "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.) or a combination of both such that any treatment system is designed to treat a minimum of the 85th percentile storm event based on historic rainfall records from nearby rain gauges.

h. "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

i. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

j. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

k. "Forecasted Rain Event" means a forecasted rain event with at least a 50 percent probability of rainfall of at last 0.1 inches as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Bell Gardens, CA, USA."

l. "MIP" means a Monitoring Implementation Plan.

m. "PPT" means Pollution Prevention Team.

n. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

o. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

p. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

q. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

r. "SWPPP" means a Storm Water Pollution Prevention Plan.

s. "Term" means the period between the Effective Date and the "Termination Date."

t. "Termination Date" means the latest of:

i. June 30 following three (3) years from the Effective Date;

ii. June 30 following two (2) years after an advanced treatment system is fully installed, operational, and optimized, if applicable;

iii. seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date; or

iv. seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

v. Notwithstanding the foregoing, if the sampling results for samples taken at the Facility as required by this Consent Decree during four (4) consecutive QSEs demonstrate no "Exceedances" (as defined in Paragraph 26 below) for any parameter at any Discharge Point, and provided that all accrued monetary obligations in this Consent Decree have been met and that there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree, then the Termination Date of this Consent Decree shall be thirty (30) days from the date Defendants provide written notification to LA Waterkeeper of its intent to terminate pursuant to this Paragraph.

u. "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. Obtain General Permit Coverage

12. Within thirty (30) days of the Effective Date, complete all permit registration documents necessary to enroll in General Permit, including by preparing a SWPPP that includes the BMPs specified in Paragraphs 16, 17 and 18 of this Consent Decree, and submit the completed documents to the State Water Resources Control Board to obtain coverage under the General Permit.

### B. Storm Water Pollution Control Best Management Practices

13. Non-Storm Water Discharge Prohibition. Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

14. Current and Additional Best Management Practices. At all times, Defendants shall implement BMPs identified in their SWPPP and BMPs described herein and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree, the General Permit, and the Clean Water Act.

15. Rain Gauge/Sensor. Defendants shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by something outside of Defendants' control. In the event of a rain gauge malfunction, Defendants shall use rain data from the Los Angeles Department of Public Works "Rio Hondo" Rain Gauge ( https://dpw.lacounty.gov/wrd/rainfall)" for purposes of precipitation quantities and timing.

16. Non-Structural BMPs for the Facility. As soon as possible but no later than October 1, 2026, unless otherwise noted, Defendants shall develop and implement the following non-structural BMPs at the Facility:

a. Sweeping. Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 µm) particles on all paved areas at least once per month outside the Wet Season and once per month during the Wet Season, and will make best efforts to schedule the sweeping within forty-eight (48) hours prior to a Forecasted Rain Event. Employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access. In addition to the once per month sweeping schedule, Defendants shall implement manual sweeping after each work shift as described in the then current SWPPP;

b. Catch Basin Filtration: Prior to Forecasted Rain events, filter socks, specifically Filterexx Envirosoxx or equivalent and Biochar socks or equivalent will be deployed around the catch basin located in Drainage Area 1 using multiple layers and/or overlapping formations to ensure the storm water has sufficient contact time with the filters before discharging. This requirement can be eliminated if an Advanced Treatment System is installed within Drainage Area 1.

c. Discharge Point Protection. To reduce pollutant deposition and protect BMPs at Discharge Points: (i) conduct targeted hand sweeping within a 10-foot radius of each Discharge Point as part of the pre-rain protocol described in Paragraph 17.b; and (ii) deploy filter socks, specifically Filterexx Envirosoxx or equivalent

and Biochar socks or equivalent using multiple layers and/or overlapping formations to ensure the storm water has sufficient contact time with the filters before discharging unless a more advanced treatment system is installed. This requirement can be eliminated with implementation of an Advanced Treatment System.

d. Store Industrial Materials Under Cover. By September 1, 2026, store all waste and material storage bins without solid lids and industrial materials with any rust or cutting oil residuals under permanent roofs, Storm-Resistant Shelters as defined by General Permit Section XVII.B.5., or with tarps deployed prior to forecasted rain events.

e. Remove Abandoned Materials. Remove, and prevent the storage of, all unused, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the entire property. For purposes of this paragraph, “abandoned” means materials that have not been used in Facility operations within the preceding twelve (12) months and for which no documented future industrial use is planned. Active raw materials, work-in-process, and finished goods inventory shall not be considered abandoned materials regardless of duration of storage.

f. Secondary Containment. Install and maintain secondary containment with a minimum of 110% capacity for all liquid drums and liquid containers holding petroleum products, hazardous waste, or chemicals.

g. Maintenance. Institute an equipment and vehicle maintenance program that ensures:

i. no maintenance activities occur outdoors during wet weather, unless such maintenance is required for the safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

ii. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

iii. when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

h. <u>Confirm BMPs</u>. Pursuant to the reporting requirements specified in Paragraph 25, Defendants shall confirm to LA Waterkeeper in writing and with photographs, that each of the above BMPs has been implemented as set forth above.

17. <u>Wet Season BMPs</u>.

a. <u>Wattles/ Filters/ Socks.</u>

i. Prior to the start of the Wet Season, no later than September 15th and annually after that, inspect and evaluate wattles/filters/socks (biochar or other equivalent media) for rips, tears or other visual damage;

ii. If wattles/filters/socks are damaged or are not sufficiently reducing pollutant concentrations, replace, employ and secure new wattles/filters/filtration socks at the drain inlet prior to Forecasted Rain events to remove sediment and metals in storm water discharged from the Facility.

b. Until an Advanced Treatment System is installed, Defendants shall place wattles/filters/socks at each industrial discharge point where physically feasible given vehicular movement requirements

to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations.

c. Pre-Rain Protocol. Within twenty-four (24) hours prior to a Forecasted Rain Event:

i. Remove any exposed waste material; and

ii. Move all industrial materials with any rust or cutting fluid residual, scrap bins, and trash cans to a storm-resistant shelter or otherwise cover them with tarps, lids, or other coverings sufficient to prevent exposure to rainfall;

d. Confirm Wet Season BMPs. Pursuant to the reporting requirements specified in Paragraph 25, Defendants shall confirm to LA Waterkeeper that each of the Wet Season BMPs has been implemented as set forth above.

18. Advanced Treatment System. As soon as possible, but no later than October 1, 2026, Defendants shall submit to LA Waterkeeper a proposal for an Advanced Treatment System, including: (A) identification of the parameter(s) requiring advanced treatment and the discharge point(s) affected; (B) preliminary design criteria and sizing calculations based on the Design Storm; and (C) a proposed implementation schedule.

a. Treatment System Design Standards. The Treatment System shall be capable of treating industrial storm water runoff generated at the Facility by a Design Storm and reducing pollutant concentrations to achieve compliance with the Table 1 numeric limit(s).

b. Review Process. LA Waterkeeper shall have thirty (30) days to review and comment on the proposed Advanced Treatment System. The Parties shall meet and confer to reach agreement on the Advanced Treatment System design and implementation

schedule. If the Parties cannot agree, the dispute shall be resolved pursuant to Section IV.

### C. SAMPLING AT THE FACILITY

19. During the Term, Defendants shall collect samples of storm water discharge from each industrial Discharge Point from at least four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year. If, due to lack of Qualifying Storm Events, fewer than two Qualifying Storm Events are collected in the first half of a Reporting Year, that shall be compensated for by collecting an additional sample from an additional Qualifying Storm Event during the second half of a Reporting Year, until a total of four samples is collected for any Reporting Year occurring during the term of this Agreement, unless there is insufficient precipitation as documented by rain gauge and photographs.

20. Timing. Such sampling shall take place as soon as practicable within the four (4) hour period required by the General Permit § XI.B.5.

21. Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendants intend to conduct sampling for any additional parameter(s) for any reason, such parameter(s) shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters pursuant to the Reporting requirements as outlined in Paragraph 25 below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

22. Laboratory and Holding Time. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis

within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

23. Detection Limit. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

24. Documentation of Inability to Sample. If a Forecasted Rain Event results in significant rainfall during regular operating hours, but Defendants are unable to sample because insufficient discharge occurs, Defendants shall document the inability to sample by taking photographs during that observation time at each Discharge Point. Defendants shall maintain those photographs along with the rain/ gauge sensor data and produce them subject to the reporting requirements outlined in Paragraph 25 below.

**D. REDUCTION OF POLLUTANTS IN DISCHARGES**

25. Table 1 Numeric Limits. Defendants shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

//

//

//

//

//

//

//

//

//

//

//

**TABLE 1[2]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 100 mg/L (annual)<br>400 mg/L (instantaneous) | NAL |
| Oil & Grease (O&G) | 15 mg/L (annual)<br>25 mg/L (instantaneous) | NAL |
| pH | 6-9 SU (instantaneous) | NAL |
| Aluminum | 0.75 mg/L (annual) | NAL |
| Copper | 0.0332 mg/L (annual)<br>0.06749 mg/L (instantaneous) | NAL<br>TMDL-Based NEL |
| Iron | 1 mg/L (annual) | NAL |
| Zinc | 0.26 mg/L (annual)<br>0.159 mg/L (instantaneous) | NAL<br>TMDL-Based NEL |
| Chemical Oxygen Demand | 120 mg/L (annual) | NAL |

26. Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: (a) where the concentration of the same pollutant in any two (2) storm water samples from the same discharge point at the Facility during a Reporting Year exceeds the annual numeric limit contained in Table 1; and/or (b) where the concentration of any pollutant in any one (1) storm water sample from the Facility exceeds an instantaneous numeric limit contained in Table 1.

27. Reporting Requirements. On April 30, July 31, October 31, and January 31, Defendants shall send a written report to LA Waterkeeper. This report shall document:

a. All BMPs implemented pursuant to this Consent Decree, with representative photographs, demonstrating that each BMP has been implemented as set forth above.

[2] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

b. Defendants' ability or inability to sample a rain event that is documented at > 0.1 inch during operating hours;

c. The complete laboratory results of all stormwater samples collected at the Facility, including the date each set of results was uploaded to SMARTS and the identification of any results that exceed the threshold limits set forth in Table 1;

d. Whether Defendants intend to conduct sampling for additional parameters.[3]

e. Annually on October 31, Defendants shall confirm to LA Waterkeeper in writing and with photographs, that each of the Wet Season BMPs has been implemented as set forth above.

28. Action Plan. As of the Effective Date, and for the remainder of the Term, if (a) Defendants have an unauthorized non-storm water discharge in violation of Paragraph 13, or (b) storm water sample results demonstrate an Exceedance as defined above; or (c) after an advanced treatment system is fully installed, operational, and optimized, the advanced treatment system discharges untreated storm water in smaller than a Design Storm (each, a "Trigger Event"), Defendants shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event. However, an Action Plan shall not be required when the BMPs for the applicable Trigger Event was or were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the Trigger Event. If a Trigger Event for a different pollutant or pollutants occurs during the time period that an Action Plan is being prepared, Defendants shall contact LA Waterkeeper to discuss whether to adjust the deadline for the pending Action Plan in light of the need to

---

[3] In such instance, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 and the Parties shall meet and confer regarding the applicable Table 1 limit within thirty (30) days of such notification.

prepare an Action Plan for the new pollutant(s). LA Waterkeeper's agreement to adjust a deadline shall not be unreasonably withheld.

a. Requirements. Each Action Plan shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable discharge in smaller than a Design Storm, and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the cause of each Trigger Event; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), the Design Storm requirement, and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b. Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges. The selection and implementation of BMPs from this list shall be based on the specific parameters causing the Trigger Event, the assessed cause of the exceedance, and the demonstrated or projected effectiveness of each BMP for the pollutant(s) of concern.

i. Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii. Pavement Improvements. Patch, pave, or otherwise resurface areas of degraded pavement or asphalt as needed in the drainage area contributing to the exceedance.

iii. Material Storage Consolidation. Consolidate all exposed material storage into a single drainage area.

iv. Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

v. Treatment Systems. Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

vi. Roof Replacement or Coating: Replace or coat degraded galvanized roofs to reduce zinc exposure from galvanized surfaces.

vii. Evaluation of Existing BMPs. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

viii. Vent Filtration. Installing filtration on exterior building vents to capture metal particulates.

ix. Downspout Filters: Installing downspout filters as a means for reducing pollutant loading on downstream BMPs or Advanced Treatment System.

c. Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 26 below.

**E. VISUAL OBSERVATIONS**

29. Storm Water Discharge Observations. During the Term, appropriately trained staff of Defendants shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

30. Monthly Visual Observations. During the Term, appropriately trained staff of Defendants shall conduct monthly visual observations of the Facility including outfalls, Discharge Points(s), outdoor industrial equipment and storage

areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

31. Visual Observations Records. Defendants shall maintain observation records, including photographs, to document compliance with Paragraphs 27 and 28. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing. Defendants shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

### F. TRAINING AND PLANS

32. Employee Training Program. Within sixty (60) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated

Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a. Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facility;

b. Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. Sampling Training. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. Visual Observation Training. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. Non-Storm Water Discharge Training. Defendants shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h. Records. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

33. SWPPP Revisions.

a. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

b. Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of

BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c. Review of SWPPP. For any SWPPP updates pursuant to Paragraphs 31.a and 31.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

## G. Compliance Monitoring and Reporting

34. LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely. Notice will be provided by

electronic mail to the individual(s) designated below at Paragraph 59. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendants shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection, except of specific materials or processes over which Defendants assert a trade secret or customer restriction.

35. Document Provision. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a. Defendants shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 59, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b. Within three (3) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 59, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

36. Compliance Monitoring. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying three thousand five hundred ($3,500.00) within thirty (30) days of the Entry Date and annually thereafter for the term of the Consent

Decree. Payments pursuant to this Paragraph shall be made via electronic funds transfer (preferred) or by check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### H. ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

37. Environmentally Beneficial Project. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Southern California Bight, Defendants shall make a payment totaling Twenty Thousand Dollars ($20,000.00) to the Rose Foundation, with Ten Thousand Dollars due within thirty (30) days of the Entry Date and the remainder due August 1, 2027, payable to Rose Foundation and sent via overnight mail to Rose Foundation, 201 4th Street, Oakland, 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

38. LA Waterkeeper's Fees and Costs. Defendants shall pay a total of Sixty Thousand Dollars ($60,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: "California Coastkeeper Alliance" and delivered by overnight carrier to California Coastkeeper Alliance, 1017 L Street PMB 308, Sacramento, California 95814. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

39. Missed Deadlines. "In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this

Consent Decree, LA Waterkeeper shall provide written notice to Defendants of such missed deadline. Defendants shall have seven (7) calendar days from receipt of such notice to cure such delinquency. If Defendants fail to cure such delinquency within fourteen (14) calendar days of receipt of LA Waterkeeper's notice, then Defendants shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 35. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Oakland, CA 94607. Defendants agree to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

**IV. DISPUTE RESOLUTION**

40. Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

41. Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 39, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

42. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

43. Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

44. Defendants' Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

45. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI. MISCELLANEOUS PROVISIONS

46. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

47. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

48. Authority. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

49. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

50. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

51. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

52. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

53. Choice of Law. The laws of the United States shall govern this Consent Decree.

54. Diligence. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

55. Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendants is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

56. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

57. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

58. Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

59. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party

seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

60. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Benjamin Harris
Erina Kwon
Alexandra Ballesteros
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org
Email: alex@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Drevet Hunt
CALIFORNIA COASTKEEPER
1017 L St. PMB 308
Sacramento, California 95814
Email: dhunt@cacoastkeeper.org
Phone: (415) 606-0864

If to Defendants:
Wilcox Machine Company and West Coast-Accudyne, Inc.
Tom Anderegg
Bruce Reichenfeld
7180 Scout Ave
Bell Gardens, CA 90201
T: (562)927-5353
E: t.anderegg@wilcoxmachine.com
E: b.reichenfeld@wcacc.com

With copies to:
Jan A. Greben
Price, Postel & Parma LLP
200 E. Carrillo Street, Suite 400
Santa Barbara, CA 93101
T: (805)962-0011
E: jgreben@ppplaw.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

61. If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: July 20, 2026

By: ____________________
Bruce Reznik
Executive Director
Los Angeles Waterkeeper

Dated: July 17, 2026

By: ____________________
Tom Anderegg
Officer of Wilcox Machine Company and West Coast-Accudyne, Inc.

APPROVED AS TO FORM

CALIFORNIA COASTKEEPER

Dated: July 20, 2026

By: ______________________
Drevet Hunt
Attorney for Plaintiff
Los Angeles Waterkeeper

PRICE, POSTEL, & PARMA LLP

Dated: July 18, 2026

By: ______________________
Jan A. Greben
Attorney for Defendants
Wilcox Machine Company and
West Coast-Accudyne, Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: September 14, 2026

CENTRAL DISTRICT OF CALIFORNIA

______________________
HONORABLE STEVE KIM
United States Magistrate Judge